1
2
3
4
5
6
7

8              **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   RICARDO CANESCO, an individual;    ) Case No.:  3:21-cv-00425-BEN-RBB
                                        )
12              Plaintiff,              )
                                        )
13   v.                                 ) **ORDER:**
                                        )
14   FORD MOTOR COMPANY, a Delaware     ) **(1) DENYING MOTION TO**
     limited liability company; and DOES 1  )     **REMAND and**
15   through 10,                        )
                                        )
16              Defendant.              ) **(2) OVERRULING PLAINTIFF'S**
                                        )     **EVIDENTIARY OBJECTIONS**
17                                      )
                                        ) **[ECF Nos. 8, 9, 10, 11]**
18   _____

19   **I.    INTRODUCTION**

20         Plaintiff Ricardo Canesco, an individual ("Plaintiff"), brings this Lemon Law action

21   against Defendant Ford Motor Company, a Delaware limited liability company

22   ("Defendant") pursuant to California's Song-Beverly Act, CAL. CIV. CODE § 1790 *et seq*.

23   *See* Complaint, ECF No. 1-3 ("Compl.") at 3.[1]

24         Before the Court is Plaintiff's Motion to Remand (the "Motion").  ECF No. 8.  The

25   Motion was submitted on the papers without oral argument pursuant to Civil Local Rule

26   7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure.  ECF No. 10.  After

27   _____

28   [1]      Unless otherwise indicated, all page number references are to the ECF-generated
     page number contained in the header of each ECF-filed document.

considering the papers submitted, supporting documentation, and applicable law, the Court **DENIES** Plaintiff's Motion.

## II.   BACKGROUND[2]

### A.   Statement of Facts

On July 19, 2020, Plaintiff purchased a used 2017 Ford F-150 Raptor from Ken Grody Ford, which was manufactured by Defendant ("the Vehicle"). Compl. at 4, ¶ 4; *see also* ECF No. 1-5 at 1-4 (the "RISC"). Plaintiff contributed $1,500.00 towards the down payment and agreed to pay $73,521.84 over the course of the loan term for the Vehicle (84 payments of $875.26). Declaration of Jason M. Avelar in Support of Defendant's Opposition to Plaintiff's Motion to Remand, ECF No. 9-1 ("Avelar Decl.") at 2, ¶ 9. He alleges the Vehicle had several defects that substantially impaired its use, value,[3] or safety and violated both an express written warranty as well as the implied warranty of merchantability. Compl. at ¶ ¶ 6, 19, 20, 21, 22. He further alleges Defendant and its representatives failed to service or repair these defects, causing "damages in a sum to be proven at trial but not less than $25,000.00." *Id.* at 5, ¶¶ 7, 8, 9. Finally, Plaintiff pleads that Defendant's failure to comply with the Song-Beverly Act and its common-law duties constitutes an unlawful business practice under California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.* (the "UCL"). *Id.* at ¶ 25.

### B.   Procedural History

On February 4, 2021, Plaintiff sued in the San Diego Superior Court, alleging state law-based violations by Defendant. *See generally* Compl.

On March 9, 2021, Defendant timely filed an Answer to Plaintiff's Complaint. *See* ECF No. 1-6 at 18-25; *see* CAL. CODE CIV. PROC. § 412.20(a)(3).

On March 10, 2021, Defendant timely removed the case to this Court. Notice of

---

[2]   The majority of the facts set forth are taken from the operative complaint, and for purposes of ruling on Plaintiff's Motion to Remand, the Court assumes the truth of the allegations pled and liberally construes all allegations in favor of the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

[3]   Notably, Plaintiff never alleges the Vehicle's purchase price in his complaint.

1   Removal, ECF No. 1 ("NOR"); *see also* 28 U.S.C. § 1446(b)(1), (c)(1).  On April 26, 2021,

2   Plaintiff filed the instant motion to remand.  Motion, ECF No. 8-1 ("Mot.").  On May 24,

3   2021, Defendant opposed.  *See* Opposition, ECF No. 9 ("Oppo.").  On June 14, 2021,

4   Plaintiff replied.  *See* Reply, ECF No. 11 ("Reply").

5   **III.   <u>LEGAL STANDARD</u>**

6   　　　　Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co.*

7   *of Am.*, 511 U.S. 375, 377 (1994).  Generally, federal subject matter jurisdiction exists due

8   to the presence of a federal question, *see* 28 U.S.C. § 1331, or complete diversity between

9   the parties, *see* 28 U.S.C. § 1332.  In cases arising out of diversity jurisdiction, section 1331

10   vests district courts with "original jurisdiction of all civil actions where the matter in

11   controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is

12   between . . . citizens of different States."  28 U.S.C. § 1331(a)(1).

13   　　　　While a plaintiff is the master of his or her complaint and may choose where to file

14   suit, removal qualifies as an important check on the plaintiff's right to choose where to file

15   suit.  *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016).  When a plaintiff

16   files a civil action in state court, a defendant in that case may remove it to federal court so

17   long as the case could have originally been filed in federal court, either due to the existence

18   of federal question or diversity jurisdiction.  28 U.S.C. § 1441(a); *City of Chi. v. Int'l Coll.*

19   *Of Surgeons*, 522 U.S. 156, 163 (1997).  However, removing a case does not deprive

20   another party "of his right to move to remand the case."  28 U.S.C. § 1448.

21   　　　　Courts strictly construe the removal statutes, rejecting removal jurisdiction in favor

22   of remand to the state court if any doubts as to the right of removal exist.  *Nevada v. Bank*

23   *of Am. Corp.*, 672 F.3d 661, 667 (9th Cir. 2012).  The district court must remand the case

24   "[i]f at any time before final judgment it appears that the district court lacks subject matter

25   jurisdiction."  28 U.S.C. § 1447(c); *see also Smith v. Mylan, Inc.*, 761 F.3d 1042, 1044 (9th

26   Cir. 2014); *Bruns v. NCUA*, 122 F.3d 1251, 1257 (9th Cir. 1997) (holding that remand for

27   lack of subject matter jurisdiction "is mandatory, not discretionary").  The defendant

28   removing an action from state court bears the burden of establishing grounds for federal

jurisdiction by a preponderance of the evidence.  *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010).

Courts evaluate the existence of diversity jurisdiction—including the amount in controversy—at the time of removal.  *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1000-01 (C.D. Cal. 2002).  The frame of reference for ruling on a motion to remand to state court is the four corners of the operative complaint at the time of removal.  *Gracier v. Edwards Dental Supply Co.*, 86 F. Supp. 956, 957-58 (N.D. Cal. 1949) (citing 28 U.S.C. § 1447(c); *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 308 U.S. 283 (1939)).

## IV.   <u>DISCUSSION</u>

Plaintiff filed suit under California's "Song-Beverly Act, also referred to as the Lemon Law, [which] stipulates a vehicle manufacturer's obligations to maintain repair facilities, to repair vehicles to conform to applicable warranties, and to repurchase or replace vehicles that cannot be conformed to applicable warranties."  *Ortega v. Toyota Motor Sales, USA, Inc.*, 572 F. Supp. 2d 1218, 1220-21 (S.D. Cal. 2008) (Sabraw, J.). Defendant removed the case pursuant to 28 U.S.C. §§ 1332 and 1446, based on allegations of complete diversity jurisdiction and satisfaction of the amount in controversy.  NOR, 3, ¶ 9, 5, ¶ 21.  In his Motion to Remand, however, Plaintiff argues Defendant failed to show the diversity of citizenship and amount in controversy requirements have been met.  *See generally* Mot.  To support diversity of citizenship and the amount in controversy, Defendant provided a copy of the Retail Installment Sales Contract (the "RISC"), which contained an address for the Plaintiff located in Chula Vista, California as well as the Total Sale Price of the Vehicle in the amount of $73,521.84.  *See* RISC at 2.  Defendant argues this adequately establishes the Court's diversity jurisdiction over this case.  Plaintiff, however, seeks to remand not by arguing that diversity jurisdiction does not, in fact, exist but rather by attacking the sufficiency of Defendant's evidence.  First, Plaintiff objects to Defendant's attempt to establish diversity by attaching the RISC to its Notice of Removal, arguing the Court should not consider this document when evaluating the Motion to

Remand because it lacks foundation, violates the rule against hearsay, and "proves nothing with respect to Mr. Canesco's citizenship." Mot. at 5:19-6:1, 8:14-17. Next, Plaintiff argues Defendant failed to show the alleged amount in controversy exceeds the $75,000 required for removal. *Id.* at 5:10-16.

In assessing the propriety of removal, the district court considers the allegations in both the complaint and notice of removal as well as any documents attached. *See Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1213 (11th Cir. 2007); *see also Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1198 n.31 (C.D. Cal. 2015) (denying a motion to remand while noting that "in determining whether removal jurisdiction exists, the court is not limited to documents attached to the notice of removal" and may even "consider supplemental evidence later proffered by the removing defendant"). Although evidence in support of removal is not required to be attached to the notice of removal, courts will consider such evidence when a plaintiff contests the Court's jurisdiction. *See, e.g.*, *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("Evidence establishing the amount is required by § 1446(c)(2)(B) ***only when*** the plaintiff contests, or the court questions, the defendant's allegation.") (emphasis added). A court may also consider "supplemental documents later proffered by the removing defendant."[4] *See Hall*, 146 F. Supp. 3d at 1198 n.31; *see also* 28 U.S.C. § 1446(b)(3) ("Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal

_____

[4] That a district court may consider documents outside the complaint, which are referenced by the complaint and/or attached to the notice of removal is supported by the fact that a motion to remand is "the functional equivalent of a defendant's motion to dismiss for lack of subject-matter jurisdiction" under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014). When ruling on such a motion, courts may properly consider documents outside the complaint if the complaint necessarily relies upon those documents even if those documents are neither (1) attached to the complaint nor (2) referenced by name in the complaint. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *as amended* (July 28, 1998) (internal citations omitted). This extension of the incorporation by reference doctrine "is supported by the policy concern underlying the rule: Preventing plaintiffs from surviving a Rule 12[ ] motion by deliberately omitting references to documents upon which their claims are based." *Id.*

may be filed within 30 days after receipt by the defendant . . . of a copy of [some] other paper from which it may first be ascertained that the case is one which is or has become removable."); *id.* at § 1446(c)(3)(A) (noting that "other paper" under subsection (b)(3) includes "information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery").

As outlined below, although the allegations of Plaintiff's Complaint make this case a close call, the evidence provided by Defendant proves diversity jurisdiction exists. However, the Court first addresses Plaintiff's evidentiary objections.  Then, the Court addresses whether Plaintiff's allegations in the Complaint alone satisfy the amount in controversy.  After finding they do not prove the amount in controversy by a preponderance of the evidence, the Court turns to the evidence in this case.  After adjusting the purchase price by applying relevant law to the RISC, the Court finds the amount in controversy satisfied by the compensatory damages and penalties alone, meaning the Court need not consider or calculate potential attorney's fees.

A.   **Evidentiary Objections**

Plaintiff submitted evidentiary objections to Paragraphs 9 and 11 of the Declaration of Jason Avelar in Support of Defendant's Notice of Removal.  *See* ECF No. 8-2 at 1-2. These objections are misplaced.

In evaluating the existence of diversity jurisdiction on a motion to remand, courts "consider . . . summary-judgment-type evidence relevant to the amount in controversy at the time of removal."  *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018).  "An affidavit or declaration used to support or oppose a motion [for summary judgment] must ... set out facts that *would be* [but not necessarily are] *admissible* in evidence...."  FED. R. CIV. P. 56(c)(4) (*emphasis* added).  Thus, "when evidence is not presented in an admissible form in the context of a motion for summary judgment, *but it may be presented in an admissible form at trial*, a court may still consider that evidence." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006) (*emphasis* in original) (citing *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003); *see*

*also Kalasho v. BMW of N. Am., LLC*, No. 3:20-cv-01423-CAB-AHG, 2020 WL 5652275, at *2 (S.D. Cal. Sept. 23, 2020) (Bencivengo, J.) (overruling evidentiary objections to the defendant's "summary-judgment-type evidence" because the plaintiffs did "not argue that BMW NA's declarations and evidence would not be admissible under any circumstances at a trial, and the material does not present any insurmountable evidentiary obstacles such as lack of foundation or proper authentication"); *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) ("[A]t summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony").

First, Plaintiff objects to Exhibit C to the Declaration, or the RISC, arguing that it (1) should be excluded under Rule 403 of the Federal Rules of Evidence ("FRE"); (2) lacks foundation under FRE 602; (3) is argumentative under FRE 611; (4) contains improper characterizations under FRE 404; (5) lacks authentication under FRE 901(a); and (6) is irrelevant under FRE 401.  ECF No. 8-2 at 2.  The objections are **OVERRULED**.  Similar RISC's have been considered in numerous cases.  Moreover, separate and aside from the evidentiary objections, "[t]he information contained in this document, such as Plaintiff's name, city, state of residence, and signature, 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'"  *Zeto v. BMW of N. Am., LLC*, No. 3:20-cv-01380-GPC-KSC, 2020 WL 6708061, at *2 (S.D. Cal. Nov. 16, 2020) (Curiel, J.) (rejecting the same Plaintiff's counsel's "boilerplate evidentiary objections . . . as being devoid of any specific argument or analysis as to why the document should be excluded" and taking judicial notice of the plaintiff's Motor Vehicle Lease Agreement, Consumer Credit Application, and Driver's License).  Further, the Court may take judicial notice of the RISC because it is integral to Plaintiff's claims.  *Compare Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (providing that "in order to 'prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting ... documents upon which their claims are based,' a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity

is unquestioned") *with* Compl. at 4, ¶¶ 4-5 (pleading that "[o]n or about July 19, 2020, Plaintiff purchased/leased" the Vehicle, and "Defendant gave Plaintiff an express warranty"); *see also Zeto*, 2020 WL 6708061, at *2 (taking judicial notice of a lease agreement for a vehicle where the authenticity of the document was not questioned because it was "judicially noticeable because even if it is not explicitly attached to the complaint, it is integral to Plaintiff's claims and its authenticity is not questioned"). Finally, to the extent Plaintiff argues the RISC constitutes inadmissible hearsay, *see* Mot. at 8:14-17, this argument fails for two reasons. First, Plaintiff's representations in the RISC qualify as admissions of a party opponent, which are an exception to the hearsay rule. *See* FED. R. EVID. 901(d)(2). Second, because the RISC is not offered to prove the truth of the matter asserted (*i.e.*, that Plaintiff contracted with Defendant) but rather to prove his address, it is not only non-hearsay but also qualifies as "legally operative conduct," which is "not hearsay" but rather "verbal acts." *See United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004) (citing cases).

       Second, Plaintiff argues that Paragraph 9 or Mr. Avelar's Declaration, arguing that it (1) should be excluded under FRE 403; (2) lacks foundation under FRE 602; (3) is argumentative under FRE 611; (4) contains improper characterizations under FRE 404; and (5) lacks authentication under FRE 901(a). ECF No. 8-2 at 2. Paragraph 9 states: "On July 19, 2020, Plaintiff executed a purchase contract for the Subject Vehicle," and "[b]ased on the purchase contract, Plaintiffs reside in Chula Vista, California." ECF No. 1-2 at 2, ¶ 9. Third, Plaintiff contends that Paragraph 11 to the Notice of Removal (1) should be excluded under FRE 403; (2) lacks foundation under FRE 602; (3) is argumentative under FRE 611; (4) contains improper characterizations under FRE 404; (5) lacks authentication under FRE 901(a); (6) is irrelevant under FRE 401; and (7) is speculative in violation of FRE 602. ECF No. 8-2 at 3. Paragraph 11 states: "In my experience litigati[ng] such cases, plaintiff's counsel routinely seek attorney's fee awards based on an hourly fee of $500, and the total amount of attorney's fees in warranty matters brought pursuant to Song-Beverly regularly exceed $15,000.00." ECF No. 1-2 at 2, ¶ 11. As outlined below, the Court need

-8-

not go in-depth addressing each objection here because many other courts have overruled the same objections filed by the same attorneys.

Plaintiffs are represented in this case by Brian K. Cline, Esq., Mark A. Johnson, Esq., and Amy L. Hirsh, Esq. of Cline, APC.  In four prior cases, four different judges denied similar motions to remand where Mr. Cline represented the plaintiffs, which advanced the same arguments accompanied by the same evidentiary objections.  *See, e.g.*, *Modiano v. BMW of N. Am. LLC*, No. 3:21-cv-00040-DMS-MDD, 2021 WL 973566, at *1 (S.D. Cal. Mar. 16, 2021) (Sabraw, J.) (denying a motion to remand advancing the same arguments and overruling the same evidentiary objections); *Zeto*, 2020 WL 6708061, at *1 (same); *Kalasho*, *W of N. Am., LLC*, No. 20CV573-L-DEB, 2020 WL 5640734, at *2 (S.D. Cal. Sept. 22, 2020) (Lorenz, J.) (same).

These court decisions are persuasive, and for the same reasons, this Court **overrules** Plaintiff's evidentiary objections.

## B.   <u>Diversity of Citizenship</u>

Federal courts are presumed to lack jurisdiction unless the Constitution or a statute expressly provides otherwise.  *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).   Such "a 'presumption' can be rebutted only by contrary evidence."  *Godoy v. Spearman*, 861 F.3d 956, 965 (9th Cir. 2017); *see also* FED. R. EVID. 301 (providing that "[i]n a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption").   Section 1332(a)(1) of Title 28 is such a statute that "provides otherwise," by creating federal jurisdiction for cases between citizens of different states where the amount in controversy exceeds $75,000.00.

As outlined below, Defendant provided evidence that rebutted the presumption that this Court lacks jurisdiction, which shifted the burden of production to Plaintiff to come forward with his own evidence.  Instead of producing his own evidence, Plaintiff attacked the evidence on which Defendant relied.  Because the Court overruled Plaintiff's evidentiary objections, and Plaintiff did not come forward with his own evidence, the Court

1  concludes complete diversity exists in this case.

2      Plaintiff's Complaint alleges that Defendant "is a limited liability company

3  organized and in existence under the State of Delaware." Compl. at 5, ¶ 1. For the purpose

4  of diversity jurisdiction, a corporation is considered a citizen of the state in which it has

5  been incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

6  In its Notice of Removal, Defendant pled that it is, and was at the time the complaint was

7  filed, a corporation incorporated in the state of Delaware with its principal place of business

8  in Michigan. NOR at 5, ¶ 20. Plaintiff does not contest Defendant's citizenship. *See* Mot.

9  Thus, the Court accepts Defendant as a citizen of Delaware and Michigan.

10      The Notice of Removal also alleges "on information and belief, Plaintiff is and was

11  at the time of the filing of the Complaint a citizen and residents [sic] of California residing

12  in Chula Vista, California." NOR at 5, ¶ 19. Defendant cites Plaintiff's address as the

13  address in Chula Vista, California provided in the RISC. *See* RISC at 2. Plaintiff—

14  although notably failing to either state his citizenship or clarify whether he is a citizen of

15  California—argues Defendant's use of his address provided in the RISC is both improper

16  and insufficient to prove his citizenship. Mot. at 8:8-10:7.

17      If a defendant carries its burden of presenting evidence that diversity of citizenship

18  exists, the burden of production shifts to the plaintiff to rebut the evidence of diversity of

19  citizenship. *See, e.g.*, *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)

20  (noting that where a party "is silent in the face of [a] presumption, the court must enter

21  judgment for [the other party] because no issue of fact remains"); *see also St. Mary's Honor*

22  *Ctr. v. Hicks*, 509 U.S. 502, 507-08 (1993) ("If the defendant carries [the] burden of

23  production, the presumption raised by the prima facie case is rebutted," leaving the plaintiff

24  with "the full and fair opportunity to [prove otherwise] through presentation of his own

25  case") (internal citations and quotations omitted); *Lincoln v. French*, 105 U.S. 614, 617

26  (1881) ("Like other presumptions, it was sufficient to control the decision of the court if

27  no rebutting testimony was produced.").

28      In this case, two principal presumptions apply. First, that federal courts lack

jurisdiction unless a statute provides otherwise. *Stock West*, 873 F.2d at 1225. Defendant, through the allegations in its removal notice, carried its burden of proving by a preponderance of the evidence, that diversity of citizenship exists under 28 U.S.C. § 1332(a). *See* NOR at 5, ¶ 22. Thus, the burden of producing similar "summary judgment type evidence" shifted to Plaintiff to rebut the evidence presented by Defendant. *See Burdine*, 450 U.S. at 254. Second, is the presumption that "[a] domicile once acquired is presumed to continue until it is shown to have been changed." *Mitchell v. United States*, 88 U.S. 350, 353 (1874).

Courts determine diversity of citizenship by a person's domicile, not his or her place of residence. *See Gilbert v. David*, 235 U.S. 561, 569 (1915); *see also Adams v. W. Marine Prod., Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020) (noting that "state citizenship is … determined by … state of domicile"). The Ninth Circuit recently defined a person's "domicile" as "her 'permanent home'—that is, where (i) she resides, (ii) 'with the intention to remain or to which she intends to return.'" *Adams*, 958 F.3d at 1221. Nonetheless, "[a]t minimum, a person's residence constitutes *some* evidence of domicile." *Id.*

Here, the RISC indicates Plaintiff's address is located in Chula Vista, California 91910. *See* RISC at 2. Defendant asks the Court to accept the RISC as evidence that Plaintiff is a California citizen, which would create a presumption that Defendant's "domicile once acquired . . . continue[d] until it is shown to have been changed." *Mitchell*, 88 U.S. at 353; *see also Anderson v. Watts*, 138 U.S. 694, 706 (1891). Courts in this District have found residency based on similar documents." *Ha Nguyen*, 2021 WL 2411417, at *3 (citing cases). Plaintiff objects to the RISC as hearsay, lacking foundation, and proving "nothing with respect to Mr. Cancesco's citizenship." *See* Mot. at 8:14-17. However, the Court has already overruled these objections. Thus, having accepted the RISC as evidence of Plaintiff's residence in California, the burden shifted to Plaintiff to prove otherwise: If "a change of domicile is alleged[,] the burden of proving it rests upon the person making the allegation." *Mitchell*, 88 U.S. at 353. In other words, "[a] party with the burden of

proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Adams*, 958 F.3d at 1221. This "presumption does demand more from the party seeking to establish a new domicile . . . than if that party were seeking to establish a continuing domicile." *Washington v. Hovensa LLC*, 652 F.3d 340, 345 (3d Cir. 2011).

In *Kalasho v. BMW of N. Am., LLC*, the court also denied a motion to remand in a similar Lemon Law case. 2020 WL 5652275, at *1. The *Kalasho* plaintiffs, like Plaintiff, did not dispute the defendant's assertion that—based on the lease agreement and bill of sale indicting the plaintiffs resided in California—they were residents of California and did not offer any contradictory evidence to prove otherwise. Rather, also like Plaintiff, they merely objected to that evidence based on lack of foundation, authenticity, and hearsay. *Id.* The court overruled the plaintiffs' evidentiary objections and denied the motion to remand, finding the unrebutted evidence established both diversity of citizenship as well as the amount in controversy. *Id.* Approximately, eight (8) months later, in *Potts v. Ford Motor Co.*, this Court came to the result when faced with the same arguments and evidentiary objections advanced both in *Kalasho* as well as in the instant Motion. No. 3:21-cv-00256-BEN-BGS, 2021 WL 2014796, at *4 (S.D. Cal. May 20, 2021) (Benitez, J.). The court noted that "[p]laintiffs coyly evade[d] addressing their own citizenship, instead arguing Defendants carry the burden of proving diversity of citizenship and that [their] evidence is inadmissible hearsay." *Id.*

As other courts have noted, Plaintiff easily could have submitted a declaration stating that he no longer resides at the address in the RISC or attached a copy of his driver's license, recent bill, or some other mailing showing his address. Instead, he did none of these things. *See, e.g.*, *Ha Nguyen v. BMW of N. Am., LLC*, No. 3:20-cv-02432-JLS-BLM, 2021 WL 2411417, at *3 (S.D. Cal. June 14, 2021) (Sammartino, J.) (noting that the "[p]laintiff has not presented any facts to indicate [she] no longer resides at that address" and "could have made a declaration that she is not a resident of California at the time of

removal"); *see also Roehm v. Ford Motor Co.*, No. 3:18-cv-01278-JM-JMA, 2018 WL 4520542, at *2 (S.D. Cal. Sept. 21, 2018) (Miller, J.) (denying a motion to remand were the plaintiff failed "to submit any evidentiary materials suggesting that she is not a citizen of California for diversity purposes" because "[i]n the event Plaintiff was not a citizen of California at the time of removal, a simple declaration to that effect would suffice to destroy diversity").  Thus, the RISC provided by Defendant evidences that Plaintiff resided in California, which allows the Court to draw a reasonable inference that he is a California resident, and that his domicile there continued until proven otherwise.  *Adams*, 958 F.3d at 1221.  The burden shifted to Plaintiff to rebut the presumption of continued domicile. *Mitchell*, 88 U.S. at 353.  Because he provided no evidence, the Court finds Defendant's evidence, namely, the RISC and removal allegations, adequately establish diversity of citizenship.

"[A] removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements."  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (quoting *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)).  Because the Notice of Removal includes allegations that plausibly plead it is a citizen of Delaware and Michigan and Plaintiff is a citizen of California, Defendant has shown complete diversity of citizenship between the parties.  This case is properly "between … citizens of different States," *see* 28 U.S.C. § 1332(a)(1), and Plaintiff's Motion to Remand cannot be sustained on this basis.

## C.    Amount in Controversy

Diversity jurisdiction also requires that "the matter in controversy ***exceeds*** the sum or value of $75,000, exclusive of interest and costs" in order for a case to be removeable. 28 U.S.C. § 1332(a)(1) (emphasis added).  "[A]s specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee*, 574 U.S. at 89 (noting "defendants may simply allege or assert that the jurisdictional threshold has been met").  Thus, when a defendant removes the case to federal court, "the defendant's amount-in-controversy

-13-

should be accepted when not contested by the plaintiff." *Id.* at 87. "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* at 89. Once a plaintiff challenges a defendant's allegations of removal jurisdiction, "§ 1446(c)(2)(B) instructs: '[r]emoval . . . is proper on the basis of an amount in controversy asserted' by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Id.* at 88. However, "the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Arias*, 936 F.3d at 922 (citing *Ibarra*, 775 F.3d at 1197-99). Where a defendant presents proof of damages exceeding the amount in controversy, "it then becomes plaintiff's burden to show, as a matter of law, that it is certain he will not recover the jurisdictional amount." *Kenneth Rothschild*, 199 F. Supp. 2d at 1001 (citing *De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1411 (5th Cir. 1995)).

Plaintiff's Complaint did not allege the amount in controversy but seeks relief under the Song-Beverly Act. *See generally* Compl. Plaintiff prays for the following damages: (1) actual damages in an amount "not less than $25,000"; (2) restitution; (3) a civil penalty in the amount of two times Plaintiff's actual damages pursuant to California Civil Code sections 1794(c) and (e); (4) any consequential and incidental damages; (5) costs of the suit and reasonable attorneys' fees pursuant to California Civil Code section 1794(d); and (6) prejudgment interest at the legal rate.[5] Compl. at 6. In its Notice of Removal, Defendant asserts that the amount in controversy was met based on a combination of the purchase price of the Vehicle; civil penalty provided for in California Civil Code section 1794(c) and (e); and reasonable attorneys' fees. *See* NOR at 3, ¶ 9. In asking the Court to remand this case, Plaintiff argues Defendant's calculations in the Notice of Removal fail

---

[5] Although the Complaint seeks recovery of prejudgment interest, the notice of removal does not plead that the Court must consider such interest to meet the amount in controversy, *see* NOR at 4-5, ¶ 18, and neither party advances argument on this issue. Thus, the Court does not include the unknown amounts potentially recoverable for prejudgment interest in its calculations of the amount in controversy. *See also Zomorodian v. BMW of N. Am., LLC*, No. 2:cv-175061-DMGPLAX, 2019 WL 6534513, at *10 (C.D. Cal. July 23, 2019) (concluding "that prejudgment interest is unwarranted in this case").

to establish the amount in controversy because Defendant (1) uses civil penalties to establish the amount in controversy and (2) fails to account for statutory offsets included in California Civil Code section 1793.2(d)(2)(C), that "could reduce damages to nothing. Mot. at 10:9-28.

Because Plaintiff contests Defendant's alleged amount in controversy, this Court must review the evidence presented and decide if the amount in controversy exceeds $75,000 by "a preponderance of the evidence." *Dart Cherokee*, 574 U.S. at 88 (citing §1446(c)(2)(B)). As set forth below, the Court analyzes first, whether the allegations in the Complaint and Notice of Removal make it facially apparent that the amount in controversy has been satisfied. Because the allegations of the Complaint do not make it facially apparent the amount in controversy is satisfied based on damages alone, the Court analyzes the evidence, including the RISC, under the preponderance of the evidence standard. Upon doing so, the Court finds the amount in controversy satisfied.

## 1. *The Amount in Controversy Is Not Facially Apparent from the Complaint*

"Where the complaint does not demand a dollar amount, the removing defendant bears the burden of proving by a preponderance of evidence that the amount in controversy" requirement satisfied. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). "This burden can easily be met if it is facially apparent from the allegations in the complaint that plaintiff's claims exceed $75,000" even if not total dollar amount is alleged. *Kenneth Rothschild*, 199 F. Supp. 2d at 1001.

"Damages recoverable under the Song-Beverly Act include  restitution,  incidental and consequential damages, attorneys' fees and costs, and, if there has been a 'willful' violation of the Act, a civil penalty." *Ortega*, 572 F. Supp. 2d at 1221. Plaintiff seeks all of the aforementioned damages. *See* Compl. at 8. These damages, and their legal basis for recovery are outlined below:

| Damages Sought: | Basis: | Calculation: |
|---|---|---|
| Actual Damages Not Less Than $25,000.00. *See* CAL. CIV. CODE § 1794(b)(1); *see also* CAL. COMM. CODE §§ 2711(1), 2712, 2713(1). | Compl. at 5, ¶ 9. | $25,000.00 |

| | | |
|---|---|---|
| Restitution.  Cal. Civ. Code § 1793.2(d)(1)-(2)(B); Cal. Civ. Code § 1790.4. | Compl. at 5, ¶¶ 10-12. | No amount pled |
| Civil Penalty in an Amount of Two Times Plaintiff's Actual Damages.  Cal. Civ. Code § 1794(c). | Compl. at 8, ¶ C. | $50,000.00 |
| **Subtotal:** | | **$75,000.00** |
| Reasonable Attorney's Fees and Costs.  *See* Cal. Civ. Code § 1794 (d), (e)(1). | Compl. at 8, ¶ E. | No amount pled |
| Prejudgment Interest at the Legal Rate.  *See, e.g.*, Cal. Civ. Code § 3287(b). | Compl. at 8, ¶ F. | No amount pled |
| **TOTAL:** | | $75,000.00 |

As shown above, Plaintiff's Complaint states that he "suffered damages in a sum to be proven at trial ***but not less than*** $25,000.00."  Copml. at 5, ¶ 8 (emphasis added).  He does not specify whether the damages that will exceed $25,000.00 include the restitution, civil penalties, attorney's fees, and costs or whether those amounts are in addition to the $25,000.00.  *See generally* Compl.  Other courts have found such vague allegations as too speculative to support a finding that the amount in controversy has been satisfied.  *See, e.g.*, *Mullin v. FCA US, LLC*, No. CV 20-2061-RSWL-PJW2020 U.S. Dist. LEXIS 86026, 2020 WL 2509081, at *1, 3 (C.D. Cal. May 14, 2020) (denying remand after finding "that the allegations in Plaintiff's Complaint do not make clear whether he is seeking more than $25,001.00 in actual damages or total damages").  However, the Court finds that although Plaintiff's allegations are vague,[6] they fail to support remand for three reasons.

First, "even if Plaintiff intended to use damages more broadly, his complaint sets forth a *minimum* rather than a maximum amount of claimed damages—an amount clearly intended to simply invoke the unlimited jurisdiction of the state trial court." *Rahman*, 2021 LEXIS 105574, at *5 (citing Cal. Civ. Code Proc. §§ 85, 88 (defining unlimited jurisdiction to include actions in which the amount in controversy exceeds $25,000)).

---

[6]    The issue of whether federal diversity jurisdiction exists would be clearer had the complaint pled "Plaintiff suffered damages, including but not limited to penalties, pre-judgment interests, post-judgment interest, attorney's fees, and costs, in a sum to be proven at trial but not greater than $75,000.00."  In that case, the amount in controversy would not be met.

-16-

Second, the Ninth Circuit has stated that "damages are distinct from penalties." *Washington Cnty. Unified Sewerage Agency v. First State Ins. Co.*, 81 F.3d 171 (9th Cir. 1996) (quoting *Travelers Ins. Co. v. Waltham Indus. Lab.*, 722 F. Supp. 814, 827-28 (D. Mass. 1988), *aff'd in part, rev'd in part on other grounds*, 883 F.2d 1092, 1099 (1st Cir. 1989) (internal citation omitted)).  While "damages" refer to a "loss suffered by an injured party expressed in a dollar amount," "penalties" refer to an amount that serves to deter undesirable conduct rather than compensate the injury party.  *Id.*  Thus, other courts faced with similar vague allegations have concluded that the allegation that a plaintiff seeks damages in amount not less than $25,000.00, although not specifying whether that amount includes civil penalties, logically cannot include those amounts because penalties are not damages.  *See Rahman v. FCA US LLC*, No. 2:21-cv-02584-SB (JCx), 2021 U.S. Dist. LEXIS 105574, at *5-7 (C.D. Cal. June 4, 2021).  Thus, because penalties are double actual damages, if penalties are added to the damages in this case, it would result in damages of exactly (but not in excess of) $75,000.00.

Third, a recent court faced with similar allegations that did not make it facially apparent the amount in controversy had been established found it appropriate to instead evaluate whether the evidence outside of the complaint satisfies the amount in controversy. *See, e.g.*, *Carillo v. FCA USA, LLC*, --- F. Supp. 3d ---, No. 2:21-cv-01229-CASJ-EMX, 2021 U.S. Dist. LEXIS 123599, 2021 WL 2711138, at *4 (C.D. Cal. June 29, 2021) ("[B]ecause the amount in controversy is unclear from the face of plaintiff's complaint, [which alleged damages in an amount not less than $25,001.00], the Court must determine whether defendants have met their burden to demonstrate by a preponderance of the evidence that the amount in controversy is greater than $75,000").

In sum, even if Plaintiff's allegations of actual damages in an amount "not less than $25,000.00" did not include civil penalties, those civil penalties of twice the amount of actual damages (*i.e.*, $25,000.00) amount to $50,000.00, resulting in amount of controversy of $75,000.00.  Consequently, based on the Complaint alone, this case does not appear to **exceed** "$75,000, exclusive of interests and costs."  Thus, like the *Carillo* court, the Court

-17-

analyzes whether the amount in controversy has been satisfied under the preponderance of the evidence test.  2021 WL 2711138, at *4.

2.  __*The Amount in Controversy is Shown by the Preponderance of the Evidence*__

"If the amount in controversy is not clear on the face of the complaint, however, defendant must do more than point to a state law that might allow recovery above the jurisdictional minimum." *Kenneth Rothschild*, 199 F. Supp. 2d at 1001.  Instead, as with citizenship, that removing "defendant must submit 'summary-judgment-type evidence' to establish that the actual amount in controversy exceeds $75,000." *Id.* (quoting *Easley v. Pace Concerts, Inc.*, No. CIV. A. 98–2220, 1999 WL 649632, * 3 (E.D. La. Aug. 25, 1999)); *see also Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir. 2004) (noting that in determining the amount in controversy, courts examine not only the facts alleged in the complaint—which are assumed true for purposes of calculating the amount in controversy—but also "summary judgment type evidence relevant to the amount in controversy at the time of removal").

a.  *Actual damages*

In terms of the actual damages Plaintiff seeks in this lemon law case, California courts have construed section 1794 of the Act as providing buyers with "compensatory damages for breach of [a seller's] contract."  *Bishop v. Hyundai Motor Am.*, 44 Cal. App. 4th 750, 755 (1996), *as modified* (Apr. 17, 1996) (quoting *Kwan v. Mercedes-Benz of North America, Inc.* (1994) 23 Cal. App. 4th 174, 188).  In other words, California limits plaintiffs who file suit under the Song-Beverly Act to breach of contract damages.  *See, e.g.*, *Bishop*, 44 Cal. App. 4th at 758 (reversing an award of emotional distress damages to a plaintiff who filed suit under the Song-Beverly Act because such damages may not be recovered in a breach of contract action).  Breach of contract damages under the Song-Beverly Act can include compensatory damages, incidental damages, consequential damages, and restitution.  *See* CAL. CIV. CODE §§ 1793.2, 1794; *see also* CAL. CIV. CODE § 1790.4 (providing that "[t]he remedies provided by this chapter are cumulative and shall not be

-18-

construed as restricting any remedy that is otherwise available").[7]

In this case, Plaintiff's expectation interest ends up being approximately the same as his reliance and restitutionary interest as they all require reimbursement of all amounts paid to Defendant (*i.e.*, the purchase price, financing amounts, etc.) as well as reimbursement for incidental and consequential damages.   The Court analyzes the relevant contract interests, finding that none prove an amount in excess of amount in controversy.   Further, restitution in Lemon Law cases requires calculation of the "mileage" or "use" offset set out by statute.   Thus, the Court analyzes Plaintiff's restitutionary interest separately.

### i.   Contract damages

California Civil Code section 1794 ("Section 1794") establishes the measure of damage for the breach of an implied or express warranty arising out of a contract for consumer goods.   It provides that the buyer's damages include the rights of replacement *or*

---

[7]   Many courts blur the distinction between actual (compensatory damages) and restitution.   "For the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."   CAL. CIV. CODE § 3300.   The primary remedies for breach of contract include expectation damages and reliance damages, and when those are inadequate, restitution.   Pryor, C. Scott, Article: Third Time's the Charm: The Coming Impact of the Restatement (Third) Restitution and Unjust Enrichment in Bankruptcy (2013) 40 Pepp. L. Rev. 843, 882 n.301.   As described below, these remedies protect various interests:

> Judicial remedies . . . serve to protect one or more of the following interests of a promisee: (a) his 'expectation interest,'[7] which is his interest in having the benefit of his bargain by being put in as good a position as he would have been in *had the contract been performed*, (b) his 'reliance interest,'[7] which is his interest in being reimbursed for loss caused by reliance on the contract by being put in as good a position as he would have been in *had the contract not been made*, or (c) his 'restitution interest,' which is his interest in having restored to him any benefit that he has conferred on the other party.

*See id.*   Thus, restitution merely represents a form of damages available to a plaintiff where the expectation and reliance interest prove inadequate.   *See* Restatement (Second) Contracts, § 344) ("Restitution measures the damages of the aggrieved party when it is unable to establish expectation damages and has no provable reliance damages.").

reimbursement set forth in subdivision (d) of Section 1793.2 of the Civil Code *along with* additional damages depending on whether the buyer rightfully rejected, revoked acceptance, or accepted the goods. CAL. CIV. CODE § 1794(b). In this case, Plaintiff seeks "actual damages" under two of its provisions.

First, "Plaintiff seeks the remedies provided in California Civil Code section 1794(b)(1), including the entire purchase price." Compl. at 6, ¶ 16. Under this provision, "[w]here the buyer has rightfully rejected or justifiably revoked acceptance of the goods or has exercised any right to cancel the sale, Sections 2711, 2712, and 2713 of the Commercial Code shall apply." CAL. CIV. CODE § 1794(b)(1); *see also* CAL. COMM. CODE § 2711(1) (providing that if the buyer rightfully rejects or revokes acceptance, the buyer may cancel and "in addition to recovering much of the price as has been paid" (a) cover, as provided in section 2712, and (b) recover damages for nondelivery, as provided in section 2713[8]). Under Section 2712 of the Commercial Code, Plaintiff would have, in addition to his right to recover the purchase price, the right to "cover," or purchase substitute goods without unreasonable delay and recover as damages the difference between the cost of cover and the contract price plus any incidental or consequential damages minus expenses saved in consequence of the breach. CAL. COMM. CODE § 2712. However, Plaintiff does not allege he purchased a replacement Vehicle, and thus, he would not be entitled to the cost of cover, only the "entire purchase price" of his original Vehicle. *See* Compl. at 6, ¶ 16.

With respect to the recoverable "purchase price," the RISC between Plaintiff and Defendant indicates the agreed-upon Total Sale Price of the Vehicle was $73,521.84. *See* RISC at 2. Further, both parties agree that the "purchase price paid" for the Vehicle is $73,521.84. *See* Mot. at 10:21-24; Oppo. at 3:3-5. Thus, this amount, when added to any penalties, could satisfy the amount in controversy. However, the Court finds that the "purchase price" argued by the parties is improper for several reasons.

---

[8]     Because there are no allegations of nondelivery (*i.e.*, that Plaintiff did not receive the Vehicle), only that the Vehicle received was defective, the Court finds this provision inapplicable.

First, the "purchase price paid" should include not just the "Cash Price" but also includes including any charges for "sales or use tax, license fees, registration fees, and other official fees, plus any incidental damages, . . . including, but not limited to, reasonable repair, towing, and rental car costs," but excluding nonmanufacturer items installed by a dealer or the buyer. *See* Cal. Civ. Code § 1793.2(d) (2)(B). Additionally, the "purchase price paid" is not limited to the amounts paid under a financing agreement but rather includes the entire sale price. *See, e.g.*, *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785, 814 (2006) (concluding "that for purposes of the reimbursement remedy under section 1793.2, subdivision (d)(1), the term 'purchase price paid' includes finance charges incurred in conjunction with the purchase")[9]; *see, e.g.*, *Carillo*, 2021 WL 2711138, at *4 ("The $29,602.06 included 'any charges for transportation and manufacturer installed options,' and plaintiff's financing charges, taxes, and fees, which are correctly included in the amount in controversy because they are recoverable pursuant to the Song-Beverly Act.") (citing *Mitchell v. Blue Bird Body Co.*, 80 Cal. App. 4th 32, 34, 39 (2000) (concluding that "plaintiffs are entitled to recover the paid finance charges from defendant")). In this case, under the RISC, of which the Court has taken judicial notice, Plaintiff's "purchase price" breaks down as follows:

| Item: | Amount: |
| --- | --- |
| **Cash Price of the Vehicle:** | $46,777.00 |
| | |
| **Additional Charges:** | |
| **Sales Tax:** | $4,099.99 |
| **Document Processing Charge:** | $80.00 |

---

[9]     In *Robertson*, the court noted that "[w]hen a seller allows payment to be made on credit or in installments over time, it is reasonable to characterize the ***amounts paid*** as the buyer's 'purchase price,' especially when that term is being defined for purposes of what is essentially a restitution remedy." 144 Cal. App. 4th at 814 (emphasis added); *see also id.* at n.22 (noting that "a finance charge imposed by a seller (in a 'retail installment sale'), as an amount which allows a buyer to make payments over time in installments, may be fairly characterized as part of the total sales price").

| EV Registration or Transfer Charge: | $30.00 |
|---|---|
| Optional Service Contract[10]: | $2,275.00 |
| Debt Cancellation Agreement[11]: | $800.00 |
| **Subtotal:** | **$57,561.99** |

| Registration Fees: | $15.00 |
|---|---|
| State Emissions Certificate Fee: | $8.00 |
| **Subtotal:** | **$57,584.99** |

| Value of Trade-In Vehicle: | $23,500.00 |
|---|---|
| Previous Balance Under Trade-In Lease: | $28,500.00 |
| Net Trade-In Value (Equity or Negative Equity)[12]: | ($5,000.00) |
| Seller Payment of Lease Balance[13]: | $3,500.00 |

---

[10]    The $,2,275.00 included as part of the purchase price for the "Optional Service Contract" is not a proper item of damages "[b]ecause the Song-Beverly Act excludes restitution for 'non-manufacturer items installed by a dealer or buyer.'" *See Carillo*, 2021 WL 2711138, at *11-12 (citing CAL. CIV. CODE § 1793.2(d)(2)(B)).

[11]    A debt cancellation agreement is not a "manufacturer-installed item," and thus, the Court suspects it may be improper to include this amount in the amount in controversy. The Court was unable to locate cases discussing this issue, but given the Court eventually concludes the damages exceed the amount in controversy by more than $800.00, the inclusion or exclusion of this amount is not determinative of jurisdiction in this case.

[12]    In auto sales, equity is the difference between the value of a vehicle and loan balance on the vehicle. *Rivera v. Ford Motor Co.*, No. 2:cv-18-07798-DSFP-JWX, 2020 WL 1652534, at *4 (C.D. Cal. Feb. 10, 2020). "Buyers have *negative* equity when their auto loan is underwater—that is, when the vehicle is worth less than the outstanding loan balance on it." *Id.* (citing *In re Penrod*, 611 F.3d 1158, 1159-60 (9th Cir. 2010)). Buyers are not entitled to recover negative equity as part of their "purchase price paid." *See, e.g.*, *Rivera*, 2020 WL 1652534, at *4-5 ("The Court agrees with and adopts the analysis of these district courts and holds that a manufacturer is not required to include negative equity in a repurchase offer under the Song-Beverly Act."). Here, Plaintiff traded in his 2011 Ford F150, which had a value of $23,500.00 but a prior lease balance of $28,500.00, resulting in a "Net Trade-In" value of -$5,000.00. RISC at 2. In other words, Plaintiff had negative equity in his previous vehicle and may not recover that negative equity as part of his recoverable purchase price for the Vehicle in this case.

[13]    The seller paid off $3,500.00 of the outstanding loan balance of his previous car and Plaintiff contributed a $1,500.00 down payment, resulting in combined payments of

| Down Payment: | $1,500.00 |
|---|---|
| Adjusted Net Trade-In Value: | $0.00 |
|  |  |
| Amount Financed: | $57,584.99 |
| Finance Charge (7.13% of the Amount Financed): | $15,936.85 |
| Total Purchase Price Under RISC: | $73,521.84 |

The Court finds that this purchase price must be reduced by both the amount of the Optional Service Contract, which is not a manufacturer-installed item, as well as Plaintiff's negative equity. Where a consumer has negative equity on a vehicle, as was the case here, "[c]ommon sense dictates that providing Plaintiffs with restitution—'status quo'—should again leave them with the [Vehicle] debt." *Rivera*, 2020 WL 1652534, at *4-5 (noting that "[r]equiring *Ford* to pay off *Plaintiffs'* old debt [more than $4,000 on their old PT Cruiser] would result in a windfall because Plaintiffs would receive damages beyond the purchase price of the new motor vehicle") (internal quotations omitted). Negative equity is not part of the "new motor vehicle" price, so the manufacturer should not be required to reimburse the buyer for their cost. *Id.* at *5 (stating that "negative equity stems from a loan on a *different* vehicle made by a *different* manufacturer; it is not a component of the 'new motor vehicle' price and therefore need not be reimbursed"). Thus, the Court rejects the Vehicle purchase price used by the parties of $73,521.84 and reduces that amount by the $5,000.00 in negative equity and $2,275.00 Optional Service Contract as shown below:

| Amount: | Item: |
|---|---|

$5,000.00, wiping out the negative equity in the previous vehicle. *See* RISC at 2. Thus, $5,000.00 of the purchase price consisted of Plaintiff's negative equity and is not recoverable. *See Rivera*, 2020 WL 1652534, at *4 (subtracting the amount of negative equity [$4,814.11] from the total of payments made [$10,518.03], down payment (including trade-in) [$2,500.00], and mileage charges [$1,027.88] when calculating the refund owed to the customer). This serves the reliance and restitutionary interest by placing the consumer in the position he would have been in had he not entered into the instant transaction: $5,000.00 in debt but reimbursed for the $23,500.00 value of his previous vehicle, which he was supposed to (but did not) receive via trade-in value of the new Vehicle via the other damages recoverable in this case.

| $73,521.84 | **(Total Purchase Price Under RISC)** |
|---|---|
| -$5,000.00 | **(Payments Made by Seller Towards Negative Equity)** |
| -$2,275.00 = | **(Optional Service Contract)** |
| $66,246.84 | **(Recoverable Purchase Price)** |

Second, in addition to contributing $1,500.00 towards the down payment, Plaintiff agreed to pay $73,521.84 over the course of the loan term for the Subject Vehicle (84 payments of $875.26).  Avelar Decl. at 2, ¶ 9.  His monthly payments of $875.26 per month began on September 2, 2020, continuing through August 2, 2027.  RISC at 2.  Plaintiff filed suit approximately five months after payments began, on February 4, 2021, at which time he would have paid only $4,376.30.  When adding this figure to the $1,500.00 down payment, the Court reasonably infers that at the time of filing, he had paid $5,876.39 out of pocket.  This leaves the Court with two options for evaluating the evidence provided for the "purchase price paid," which a lemon law plaintiff may recover: (1) the amounts paid out of pocket to date or (2) the adjusted purchase price (excluding negative equity).  As shown below, the amount used determines whether the amount in controversy is satisfied:

| | | **Amounts Paid to Date:** | **Adjusted Purchase Price:** |
|---|---|---|---|
| Actual Damages Not Less Than $25,000.00 | **Purchase Price:** | $5,876.39 | $66,246.84 |
| | **Use Offset[14]:** | $2,484.26 | $2,484.26 |
| | **Subtotal:** | **$3,392.13** | **$63,762.58** |
| Civil Penalty in an Amount of Two Times Plaintiff's Actual Damages. | | $6,784.26 | $127,525.16 |
| **TOTAL:** | | **$10,176.39** | **$191,287.74** |

In *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1007 (N.D. Cal. 2002), the court held that "in the context of an automobile lease," the "actual price paid or payable by the buyer" extends "only [to] those payments made in fact by the lessee" rather than "to all payments which might be due for the remainder of the lease term."  Yet, with respect to a vehicle that is purchased, courts have been left with little guidance as to whether the purchaser should recover the outstanding loan balance in addition to amounts paid under a financing agreement.  *Compare D'Amico v. Ford Motor Co.*, No. CV 20-2985-CJC (JCX),

[14] *See infra*, Section IV(C)(2)(a)(ii).

-24-

3:21-cv-00425-BEN-RBB

2020 U.S. Dist. LEXIS 90921, 2020 WL 2614610, at *3 (C.D. Cal. May 21, 2020) (holding that restitution for a leased vehicle was the "price paid," which "under the statute [was] not the [Manufacturer Suggested Retail Price or purchase price], but [rather] only what Plaintiff ha[d] paid [to date] under her lease") *with Allen v. FCA US, LLC*, No. 2:21-cv-03320-SVW-E, 2021 U.S. Dist. LEXIS 131330, at *1 (C.D. Cal. July 13, 2021) ("As to actual damages, Plaintiff is entitled to the actual amount of funds paid to the seller."), *Messih v. Mercedes-Benz USA, LLC*, No. 21-cv-03032-WHO, 2021 U.S. Dist. LEXIS 118412, 2021 WL 2588977, at *11-14, 34, n.3 (N.D. Cal. June 24, 2021) (holding "that the total cash price listed in the RISC, $56,146.50 (and as restated in the Complaint), demonstrates 'the price paid or payable' for the subject vehicle," and "[u]nlike *D'Amico*, Messih purchased the subject vehicle, which makes the amount paid or payable the damages he will be seeking").

Many of these cases holding that courts analyzing a purchase rather than a lease should use the purchase price have not addressed whether the purchaser paid off the vehicle in full at the time of purchase or whether the purchaser still owed payments.  This Court was unable to locate any cases clearly explaining that the "purchase price paid" includes the consumer's outstanding loan balance (*i.e.*, not just the monthly payments made by the consumer towards equity in the vehicle).  However, the purpose "of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003) (discussing restitution under the California UCL); *see also Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) (noting that restitution would provide the plaintiff with "the return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received") (quoting *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 174 (2000)).  Thus, return to status quo must include paying off the loan balance.  If it did not, the consumer would have his or her down payment and monthly payments returned but left with a loan that still needed to be repaid and no funds to repay it, which would not put the consumer in the position he or she was in before buying the

vehicle.  *But see Pizano v. FCA US LLC*, No. 2:21-cv-06193-RGK-MAA, 2021 U.S. Dist. LEXIS 148058, at *2-3 (C.D. Cal. Aug. 6, 2021) (remanding to the superior court after finding the defendant failed to plausibly allege the amount in controversy because the RISC indicated the plaintiffs paid only $6,000.00 as a down payment with remaining balance to be paid over six years, so "[w]ith $6,000.00 as a starting point, the Court [found] it implausible that the amount in controversy exceeds $75,000").

Of course, the amounts for the loan payoff can either be repaid directly to the lender or to the buyer, who must repay the lender.  Here, Defendant is the manufacturer of the Vehicle, *see* Compl. at 6, ¶ 4, but the lender appears to be Ken Grody Ford, *see* RISC at 2.  Thus, the named defendant is not the lender.  Even if an offset was allowed for outstanding amounts owed on the loan under the law, it would not be appropriate here.

Second, Plaintiff "seeks the remedies set forth in California Civil Code section 1794(b)(2), including the diminution in value of the Vehicle resulting from its defects,"[15] stating that he "believes that, at the present time, the Vehicle's value is de minimis." Compl. at 6, ¶ 16.  Under this provision, if the buyer accepts the allegedly defective vehicle, "Sections 2714 and 2715 of the Commercial Code shall apply, and the measure of damages shall include the cost of repairs necessary to make the goods conform."  CAL. CIV. CODE § 1794(b)(2).  Section 2714 of the Commercial Code addresses a buyer's damages for breach of a contract with respect to accepted goods.  It provides that "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as

---

[15]   Normally, California law requires courts to award the lesser of either the (1) cost to repair defective property or (2) diminution in value.  *See Hand Elecs., Inc. v. Snowline Joint Unified Sch. Dist.*, 21 Cal. App. 4th 862, 869-70 (1994).  However, the Lemon Law appears to be an exception to this general rule allowing the plaintiff to elect restitution (*i.e.*, reimbursement of the purchase price paid with deductions for use) "in lieu of replacement" (*i.e.*, the Lemon Law equivalent to a cost of repair by simply replacing the Vehicle).  *Lundy v. Ford Motor Co.*, 87 Cal. App. 4th 472, 475-76 (2001); *see also* CAL. CIV. CODE § 1793.2(d)(1) (allowing the buyer to "elect restitution in lieu of replacement").  Thus, the Court does not find Plaintiff limited to one measure of damages over another in this case.

warranted." CAL. COMM. CODE § 2714(2). It also authorizes incidental and consequential damages pursuant to section 2715 of the Commercial Code.[16]

"As the conjunctive language in Civil Code section 1794 indicates, the statute itself provides an additional measure of damages beyond replacement or reimbursement and permits, at the option of the buyer, the Commercial Code measure of damages which includes 'the cost of repairs necessary to make the goods conform.'" *Park v. Jaguar Land Rover N. Am., LLC*, No. 3:20-cv-00242-BAS-MSB, 2020 U.S. Dist. LEXIS 115302, 2020 WL 3567275, at *3, n.1 (S.D. Cal. July 1, 2020) (Bashant, J.) (quoting *Krotin v. Porsche Cars N. Am., Inc.*, 38 Cal. App. 4th 294, 302 (1995) (citations omitted). Plaintiff states in his Complaint, that the Vehicle's value is *de minimis*. In other words, Plaintiff alleges the Vehicle's value is almost zero dollars, meaning that even under this alternative measure of damages, his damages would still likely satisfy the amount in controversy given the Vehicle's purchase price, which was over $60,000.00.

For example, in *Park*, the plaintiff also "alternatively [sought] the remedies set forth in California Civil Code section 1794(b)(2), including the diminution in value of the Vehicle resulting from its defects." 2020 WL 3567275, at *3, n.1. Because the plaintiff, like Plaintiff here, sought damages under Section 1794(b)(2), including diminution of value, and that section authorizes recovery of the cost of repairs necessary to make goods conform where the buyer has accepted the goods, *see* CAL. COMM. CODE § 2714, 2715, he could recover the amounts necessary to repair the Vehicle. *See id.* Given the *Park* plaintiff alleged his vehicle that he purchased for $68,268.16 was almost worthless, his actual damages would be substantial under this alternative measure of damages as well. *Id.* Similarly, in this case, if for example, Plaintiff alleged the value of the Vehicle was $1.00, the diminution in value would be $66,245.84 ($66,246.84 [Adjusted Purchase Price] - $1.00 [Value of Vehicle] = $66,245.84). Thus, thus alternative measure of damages when

---

[16] Defendant's Notice of Removal states that the amount in controversy is satisfied in this case "before adding Plaintiff's claims for . . . incidental and consequential damages." NOR at 4-5, ¶ 18. Thus, the Court does not address incident and consequential damages.

added to civil penalties would also make the actual damages rise above the amount in controversy.

Based on a preponderance of the evidence provided by both Plaintiff and Defendant, it is clear "the estimate of the total amount in dispute" for contract damages exceeds $60,000.00. However, Plaintiff contends that this amount must be reduced, and when reduced, such "statutory offsets *could* in fact wipe out the entire damages amount." Mot. at 11:3-6 (noting that "[f]or example, if the first onset of the problem was at 120,000 miles, and all payments had been made, the compensatory amount would be zero"). Thus, the Court analyzes Plaintiff's restitutionary measure of damages as well.

### ii.   Restitution

Plaintiff's alleged actual damages include restitution for the entire purchase price of the Vehicle pursuant to Section 1794(b)(1). *See* Compl. at 8, ¶ 16. Section 1794(b)(1) provides that "[t]he measure of the buyer's damages in an action shall include the rights of replacement *or* reimbursement as set forth in subdivision (d) of the Section 1793.2." CAL. CIV. CODE § 1794(b)(1) (emphasis added). Section 1793.2 of the Civil Code ("Section 1793.2"), in turn, provides that where a manufacturer "is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall make restitution to the buyer." CAL. CIV. CODE § 1793.2(d)(2)(B). The measure of damages for such restitution is the "amount equal to the purchase price paid by the buyer, less that amount directly attributable to use by the buyer prior to the discovery of the nonconformity." *See* CAL. CIV. CODE § 1793.2(d)(1).

Plaintiff contends that Defendant's calculations for the amount in controversy fail to account for statutory offsets, which could potentially reduce his damages to nothing. Mot. at 10:9-28. The restitutionary statutory repurchase of a vehicle awarded under the Song Beverly Act must be "reduced by … that amount directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor." CAL. CIV. CODE § 1793.2(d)(2)(C). Thus, courts reduce amounts recoverable under the lemon law by the amount directly attributable to use of the vehicle by the purchaser (as

measured by miles driven) before the first repair (or attempted repair) of the problem as prorated against a base of 120,000 miles.  *See Brady*, 243 F. Supp. 2d at 1008-09 (citing CAL. CIV. CODE § 1793.2(d)(2)(B)); *see also Kamarzari v. BMW N. Am., LLC.*, No. 2:18-cv-03778-RSWL-RAO, 2018 WL 5892160, at *2 (C.D. Cal. Nov. 8, 2018) (noting that "[t]his calculation provides the actual damages that Plaintiff suffered"); *see also Hernandez v. FCA US, LLC*, No. 2:20-cv-01058-RSWL-MAA, 2020 WL 3497399, at *4 (C.D. Cal. June 29, 2020).  Thus, the formula for calculating the mileage/use offset is as follows:

$$\frac{\text{\# of Miles Drive Between Purchase \& First Repair Attempt}}{120{,}000 \text{ Miles}} = \text{Use Offset Multiplier}$$

$$\text{Purchase Price} \times \underline{\text{Use Offset Multiplier}} = \text{Use Offset Deduction} \quad \rightarrow \quad \text{Purchase Price} - \underline{\text{Use Offset Deduction}} = \text{Restitution}$$

*See Wickstrum v. FCA USA LLC*, No. 3:20-CV-00336-L-JLB, 2021 WL 532257, at *1-2 n.2 (S.D. Cal. Feb. 12, 2021) (Lorenz, J.) ("The formula to calculate the mileage offset is: (number of miles driven prior to first repair attempt) / (120,000 miles) x (vehicle purchase price).") (citing CAL. CIV. CODE § 1793.2(d)(2)(C)).

Courts should consider this use offset when evaluating whether the amount in controversy has been satisfied.  *Schneider v. Ford Motor Co.*, 756 F. App'x 699, 702 (9th Cir. 2018); *see also Martinez v. Ford Motor Co.*, No. 1:18-cv-01607-LJO-JLT, 2019 U.S. Dist. LEXIS 76402, 2019 WL 1988398, at *5 (E.D. Cal. May 6, 2019) (noting that "because the use offset places a statutory limit on the amount of damages recoverable under the Act, that limit must be considered for purposes of calculating the amount in controversy") (citing *Lewis*, 627 F.3d at 400).  Such "[a] statutory limit on recoverable damages is distinct from an offset sought as an affirmative defense that may or may not be applicable to limit recoverable damages." *Martinez*, 2019 WL 1988398, at *12-13.  However, "the potential offset does not [necessarily] alter the amount Plaintiff might obtain if he is successful at trial (*i.e.*, what is at stake)" because "[t]he offset is not

-29-

automatic." *Wickstrum v. FCA USA LLC*, 2021 WL 532257, at *2 (citing *Arias*, 936 F.3d at 927). Rather, the Song-Beverly Act permits, but does not require, a manufacturer to reduce the purchase price by the use offset where the manufacturer "affirmatively (and successfully)" raises the issues through either affirmative defenses and/or the presentation of evidence at trial. *See id.*; *see also Niedermeier v. FCA US LLC*, 56 Cal. App. 5th 1052, 1064 (2020) (acknowledging that "the Act *permits* a manufacturer to reduce the restitution."); CAL. CIV. CODE § 1793.2 (providing that "when restitution is made ... the manufacturer ... *may* [reduce the amount] ... directly attributable to [the prior] use") (emphasis added); California Civil Jury Instruction (CACI) No. 3241 (indicating the defendant has the burden to prove the number of miles the plaintiff drove prior to first returning the car to cure the defect).

For example, in *Schneider*, the Ninth Circuit reversed the district court's decision remanding a case. 756 F. App'x at 702. Even though the defendant's estimate did not account for the use offset, that did "not mean that Ford's evidentiary showing was insufficient." *Id.* The court reasoned that it was reasonable to assume that "the F-150s did not lose nearly all of their value after a few years of use." *Id.* Thus, even though that issue would reduce the amount in controversy, it would not reduce it so substantially that it would fall below the jurisdictional minimum. *Id.* Similarly, in *Wickstrum*, the court denied a motion to remand noting that "[f]or the mileage offset to reduce the amount below the required threshold, Plaintiff would have had to drive more than 60,000 miles in less than two years," based on the case being filed on January 16, 2020, and the car being purchased on January 20, 2018." *Wickstrum*, 2021 WL 532257, at *3, n.6.

Here, as in *Schneider*, the defendant's calculations regarding the amount in controversy do not account for the mileage offset. *See generally* NOR and Oppo. Although Plaintiff alleges the statutory offsets here could be significant enough to reduce his damages below the required amount in controversy, Mot. at 10:9-28, the Complaint is silent as to—and Plaintiff provides no declarations providing evidence of—when, if ever, Plaintiff first provided the Vehicle for repairs, the milage of the Vehicle upon doing so, or

-30-

how many miles Plaintiff drove the Vehicle.  *See generally* Compl.; Mot.  Such information is needed in order to calculate the offset Plaintiff seeks.

On the one hand, other courts faced with a complaint devoid of allegations as to mileage and the date a vehicle was brought in for repairs along with a Notice of Removal and briefing lacking such information have remanded the case based upon a finding that the amount in controversy has not been satisfied.  *See, e.g.*, *Mullin*, WL 2509081, at *3 (remanding the case because the defendants failed to take into account the mileage offset, where they "could have submitted their own evidence in order to calculate the mileage offset" but failed to do so); *Cox v. Kia Motors Am., Inc.*, No. 20-cv-02380-BLF, 2020 U.S. Dist. LEXIS 182303, 2020 WL 5814518, at *4 (N.D. Cal. Sept. 30, 2020) ("Because Kia has failed to account for the mileage offset, it has failed to establish either the amount of actual damages or the maximum recoverable civil penalties, calculated as twice actual damages.").  For example, in *Pizano v. FCA US LLC*, No. 2:21-cv-06193-RGK-MAA, 2021 U.S. Dist. LEXIS 148058, at *2-3 (C.D. Cal. Aug. 6, 2021), the court remanded to the superior court after finding there was no indication as to how many miles Plaintiffs drove the car before the first repair, leaving the court with considerable doubt as to the amount in controversy.  *Id.* at *2.  Additionally, the plaintiff could only show payments of $6,000.00 to the seller and the attorney's fees were too speculative to plausibly allege damages above $75,000.00.  *Id.* at *2-3.

On the other hand, other courts faced with the same absence of information as the use offset have noted that the use offset is not mandatory but rather applies at the manufacturer's option, so where the court receives no information regarding its application, it cannot assume its application.  *See Wickstrum*, 2021 WL 532257, at *2; *see also Park*, 2020 U.S. Dist. LEXIS 115302, at *10-11, 2020 WL 3567275 (S.D. Cal. July 1, 2020) (noting the party had only used the car for less than a year, so it was reasonable to assume any offset would not be large enough to lower the cumulative amount of damages).  For example, in *Martinez v. Ford Motor Co.*, the court denied a motion to remand a case brought under the Song-Beverly Act where "[t]he complaint contain[ed] no allegations

-31-

regarding when Plaintiffs' vehicle was delivered to Defendant for repair or the mileage on the vehicle at that time," noting that "the number of miles of use is critical to determining the use offset." 2019 WL 1988398, at *3, 10-11. However, in *Martinez*, the "[d]efendant . . . made an assumption 4,500 miles were driven before the vehicle was brought in for repairs." *Id.* at *10. The court noted that in order to determine whether the defendant had made a reasonable assumption, it would require "at a minimum, some information about the duration of time the vehicle was driven before it was delivered to Defendant for repair." *Id.* "Absent any allegations in that regard, the maximum duration of the implied warranty of merchantability provides the outer limits of the length of time Plaintiffs could use of the vehicle before delivering it for repair and still be covered by the implied warranty." *Id.* Thus, based upon the three-month maximum warranty period provided by California Civil Code section 1795.5(c),[17] it "[was] reasonable to presume Plaintiffs' vehicle was presented to Defendant within that 3-month time frame since Plaintiffs state claims of violation of the implied warranty of merchantability." *Id.* at *11. "Assuming the vehicle was brought in for repair at the three-month limit, 4,500 miles [was] a reasonable assumption for three months of driving." *Id.*

Like the *Martinez* plaintiff, Plaintiff alleges he was provided with an express and implied warranty, and the alleged issues with the Vehicle arose during that warranty period. Compl. at 4, ¶¶ 4-5, 8-9, ¶¶ 18-22. However, the RISC does not indicate the extent of the express warranty period, *see* RISC at 1-4, and the Complaint is unclear as to how long the warranty period lasted and/or the date Plaintiff informed Defendant of the issues with the Vehicle. Plaintiff merely alleges that "[p]ursuant to Civil Code section 1791.1, the duration

---

[17]    Section 1795.5(c) of California's Civil Code provides the duration of the implied warranty of merchantability. CAL. CIV. CODE § 1795.5(c). It mandates that "with respect to used consumer goods sold in this state," which includes used cars, an implied warranty would "have a duration of less than 30 days but not more than three months following the sale." *Id.* Further, where "no duration for an express warranty is stated," the aforementioned "duration of the implied warranties" provides the maximum warranty period. *Id.*

-32-

of the implied warranty is coextensive in duration with the duration of the express warranty provided by Defendant, except that the duration is not to exceed one year." Compl. at 8, ¶ 19.[18]

Plaintiff's allegations do not indicate any miles driven that would warrant an offset before "Plaintiff presented the Vehicle to Defendant's representative in this state." Compl. at 7, ¶ 14. They also do not indicate Plaintiff ever provided notice of the issues to Defendant or sought to repair them. *See id.* Plaintiff argues for application of the offset but provides no information regarding the amount of the offset. *See, e.g.*, *Messih*, 2021 WL 2588977, at *5 (where the defendant did not calculate a mileage offset reduction in its Notice of Removal, the calculation provided in its opposition to the motion to remand was sufficient given the plaintiff did not rebut the evidence or "indicate what the appropriate mileage offset should be"). The Court notes that at the time of purchase, on July 19, 2020, the Vehicle's odometer was 64,505. RISC at 2. At most, the warranty period would be three months following the sale. *See Martinez*, 2019 WL 1988398, at *5; *see also* CAL. CIV. CODE § 1795.5(c). Further, Plaintiff also alleges that defects substantially impaired the safety of the Vehicle, *see* Compl. at 6, ¶ 6; thus, the Court reasonably infers that as of the date Plaintiff filed suit, which was approximately six months after Plaintiff purchased the Vehicle, that Plaintiff no longer drove the Vehicle.

Even if the Court assumed Plaintiff drove 4,500 miles in the three month period that the warranty applied, like the *Martinez* court did, the use offset multiplier would be 0.04

---

[18] Plaintiff pleads an implied warranty under section 1791.1 of the Civil Code. *See* Compl. at 8, ¶ 19. However, because Plaintiff purchased a used car, rather than a new car, the implied warranty under section 1795.5 of the Civil Code, discussed in *Martinez*, would apply instead. *See, e.g.*, *Peterson v. Mazda Motor of Am., Inc.*, No. SA-cv-13-01972-DOC (ANx), 2014 U.S. Dist. LEXIS 185212, at *9 (C.D. Cal. July 3, 2014) ("Under Song-Beverly, the duration of the implied warranty of merchantability is coextensive in duration with any express warranty; however, despite the length of the express warranty, the created implied warranty extends no longer than one year after purchase for new goods, Cal. Civ. Code § 1791.1(c), and no longer than three months for used goods, Cal. Civ. Code § 1795.5(c).").

(4,500 [miles driven]/120,000 [multiplier]), which when multiplied by the adjusted purchase price ($66,246.84) would only result in $2,484.26 in use offset, resulting in actual damages of $63,762.58. *See, e.g.*, *Martinez*, 2019 WL 1988398, at *5 ("Assuming the vehicle was brought in for repair at the three-month limit, 4,500 miles is a reasonable assumption for three months of driving.").

If the 4,500 mile use offset over the maximum three month potential warranty period found reasonable by the *Martinez* court is considered, the use offset of $2,484.26 results in actual damages of $63,762.58.  Absent civil penalties, the amount in controversy still has not been satisfied.

### b.   *Civil penalties*

Plaintiff argues that the Court should not consider civil penalties because (1) they are speculative and (2) Defendant argues against them. Mot. at 11:12-13:6. Defendant responds that not only is it well-established that civil penalties should be considered when calculating the amount in controversy, but based on the statutory repurchase price ($73,521.85), the civil penalties ($147,043.68) bring the amount in controversy to $220,565.22, which well exceeds the amount in controversy. Oppo. at 5:1-6:23.  In reply, Plaintiff argues that Defendant's Answer disputes liability for civil penalties, *See* Answer, ECF No. 1-6 at 23:20-22, but in opposing remand, Defendant argues "the case qualifies for civil penalties," *see* Reply at 4:26-7:24 (citing Oppo.).  Plaintiff appears to argue that Defendant should not be allowed to take inconsistent positions.

The Song-Beverly Act authorizes plaintiffs to recover "a civil penalty which shall not exceed two times the amount of actual damages." CAL. CIV. CODE §1794(c). "Courts treat the Song-Beverly Act's civil penalties akin to punitive damages." *Carillo*, 2021 WL 2711138, at *6 (denying a motion to remand after finding the amount in controversy satisfied based on "the amount of actual damages available as restitution" of $25,018.70, which when adding the civil penalty of twice the amount ($50,037.40), amounted to a total of $75,056.10 in controversy).  "It is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th

Cir. 2001), *holding modified on other grounds by Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) (citing *Bell v. Preferred Life Assur. Society*, 320 U.S. 238, 240 (1943)).   However, courts in this District disagree on the issue of "whether the Song-Beverly Act's civil penalties should be included in the calculation of the amount in controversy." *Ha Nguyen*, 2021 WL 2411417, at *4 (citing cases).

Four cases have included civil penalties in the amount in controversy calculation. *See id.* (finding "the arguments in favor of including civil penalties in the amount in controversy calculation in a Song-Beverly Act action more persuasive"); *Kalasho*, 2020 WL 5652275, at *2 (same); *Modiano*, 2021 WL 973566, at *4 (same); *Potts*, 2021 WL 2014796, at *5 (same).   Two courts have held that the defendant must meet an evidentiary burden of showing that a civil penalty would likely be awarded.   *See Millan v. FCA U.S. LLC*, No. 3:20-cv-00328-JM-MDD, 2020 WL 3604132, at *2 (S.D. Cal. July 2, 2020); *Ronquillo v. BMW of N. Am., LLC*, No. 3:20-cv-1413-W-WVG, 2020 WL 6741317, at *3 (S.D. Cal. Nov. 17, 2020) (finding "defendant must make some effort to justify the assumption" that civil damages will be awarded).   Such cases echo Plaintiff's arguments that Defendant has failed to carry its burden regarding proving civil penalties should be added to the amount in controversy because it "has not pointed to any specific allegation of willfulness in the Complaint that suggest[s] a civil penalty will be awarded or how much it might be."   Reply at 6:6-10.   However, as outlined below, this Court sides with the majority of courts and more recent cases, which find civil penalties appropriate for inclusion in the calculation of the amount in controversy without the defendant needing to "prove a case against itself" with respect to liability for civil penalties.

The amount in controversy encompasses "all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018).   It "is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).   Thus, "[i]n measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a

verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Id.* (citing *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *see also Martinez*, 2019 WL 1988398, at *12 ("For jurisdictional purposes, it is the amount Plaintiffs' claims put at issue that guides the amount-in-controversy calculation—the total *disputed* amount—not a prospective assessment of defendant's actual liability.").

Because Plaintiff alleges Defendant owes "a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (e)," *see* Compl. at 7, ¶ 11, the Court considers those civil penalties even though Defendant disputes them in its Answer, *see* Answer, ECF No. 1-6 at 23:20-22. *See, e.g.*, *Brady*, 243 F. Supp. 2d at 1010 (explaining that the two-time civil penalty provided by the Song-Beverly Act is properly included in the amount in controversy); *see also Park*, 2020 WL 3567275, at *3-4 (noting that "the Court also is persuaded by comparable decisions that consider the maximum amount of civil penalties because that is what has been placed into controversy").

Based on the statutory repurchase price in this case ($63,762.58), a two-time civil penalty comes out to $127,525.16. Therefore, Plaintiff could be entitled to an aggregate amount of $191,287.75. This amount exceeds the $75,000.00 jurisdictional threshold. Accordingly, the Court finds it unnecessary to consider the parties' arguments as to whether the Court should consider attorneys' fees when calculating the amount in controversy.[19] *See, e.g.*, *Ha Nguyen*, 2021 WL 2411417, at *5 (noting that whether

---

[19] That being said, the Court finds it well established that courts should consider attorney's fees recoverable by statute when calculating the amount in controversy. *Arias*, 936 F.3d at 922 (citing *Fritsch*, 899 F.3d at 794); *see also Brady*, 243 F. Supp. 2d at 1010 ("[W]here an underlying statute, such as the Song–Beverly Act, authorizes an award of attorney's fees, such fees may be included in calculating the amount in controversy."). The Song-Beverly Act is such a statute, which expressly provides that "the buyer shall recover damages and reasonably attorney's fees and costs." CAL. CIV. CODE § 1794(e)(1). Even if the Court reviewed only the allegations of the Complaint and Notice of Removal, which establish Plaintiff's entitlement to exactly $75,000.00 in damages, the Court finds it

-36-

attorney's fees should be included was a moot point because "the amount in controversy is met by actual damages and the civil penalty alone").

Therefore, based on a preponderance of the evidence provided, it is clear "the estimate of the total amount in dispute" exceeds $75,000, and thus, the amount in controversy under 28 U.S.C. §1332(a)(1) has been satisfied. *Lewis*, 627 F.3d at 400.

## D. **Request for Jurisdictional Discovery**

In Plaintiff's reply brief, "Plaintiff requests jurisdictional discovery immediately, before the remand is heard" to the extent "Defendant's true position is that such civil penalties are justified." Reply at 10:7-11. However, a moving party may not raise new arguments in a reply brief. *See*, *e.g.*, *U.S. ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) (noting that "[i]t is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers"); *see also Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 894-95 (1990). Thus, Plaintiff's request for jurisdictional discovery is **DENIED**.

## E. **Comity**

"The comity doctrine counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction." *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 421 (2010). It "reflects . . . a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions." *Id.* (internal quotations omtited). Plaintiff makes various arguments that comity warrants this Court remanding the case because it "exclusively involves matters of California law for a single recently purchased consumer vehicle." Mot. at 14:5-23. However, numerous courts have declined remand motions filed in the same types of cases, rejecting the same comity arguments where the Court found diversity jurisdiction. *See, e.g.*, *Wickstrum*, 2021 WL

---

reasonable to estimate that at least $1.00 in attorney's fees will be incurred. This $1.00, pushes this case over the amount in controversy based on the allegations in the Complaint alone (*i.e.*, that Plaintiff's damages would be "not less than $25,000.00," and that Plaintiff also sought civil penalties and attorney's fees).

532257, at *3 (rejecting the same argument in a similar case brought under the Song-Beverly Act); *see also Park*, 2020 WL 3567275, at *6 (same).  Likewise, because the Court determines it possesses diversity jurisdiction over this action, it rejects Plaintiff's comity argument. *See, e.g., BNSF Ry. Co. v. O'Dea*, 572 F.3d 785, 793 n.2 (9th Cir. 2009) (Fisher, J., concurring) ("[D]istrict courts sitting in diversity ... lack the option of refusing state law claims out of consideration for 'judicial economy, convenience, fairness, and comity'").

## V. <u>CONCLUSION</u>

This case satisfies both the diversity of citizenship and amount in controversy requirements.  The Court finds that Defendant properly removed this case based on diversity jurisdiction.  *See* 28 U.S.C. §1332. Therefore, the Court **DENIES** Plaintiff's Motion to Remand.  Additionally, the Court **OVERRULES** Plaintiff's Evidentiary Objections and **DENIES** Plaintiff's request for jurisdictional discovery.

Finally, in light of the Court's finding of jurisdiction, it notes that Plaintiff has named Does 1 through 10 in this lawsuit.  Unlike California code pleading, the Federal Rules of Civil Procedure ("FRCP") neither authorize nor prohibit the use of fictitious parties; however, FRCP 10 does require a plaintiff to include the names of all parties in his complaint.  *See Keavney v. Cty. of San Diego*, No. 319CV01947AJBBGS, 2020 WL 4192286, at *4-5 (S.D. Cal. July 21, 2020) (Battaglia, J.) (citing FED. R. CIV. P. 10(a)). Further, naming doe defendants implicates Rule 4 requiring service of the complaint.  *Id.* (noting that "it is effectively impossible for the United States Marshal or deputy marshal to fulfill his or her duty to serve an unnamed defendant"); *Finefeuiaki v. Maui Cmty. Corr. Ctr. Staff & Affiliates*, 2018 WL 3580764, at *6 (D. Haw. July 25, 2018) (same).  Where a plaintiff fails to link the alleged wrong or explain how any of the unidentified parties he sued personally caused a violation of his rights, the court must dismiss those individuals, especially when they have not been served.  *See, e.g.*, FED. R. CIV. P. 4(m) (providing that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").  Because

the Court denies remand, the Court orders that absent amendment to name the doe defendants and service within forty-five (45) days, the doe defendants will be dismissed without prejudice.

**IT IS SO ORDERED.**

DATED:    November 4, 2021

_____
**HON. ROGER T. BENITEZ**
United States District Judge

3:21-cv-00425-BEN-RBB